**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| ALVIN E. COATES, | * |
| Plaintiff, | * |
| v. | * |
| | Civil Case No.: PWG-12-1787 |
| THOMAS J. VILSACK, SECRETARY, | * |
| UNITED STATES DEPARTMENT OF AGRICULTURE, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Alvin Coates, believing that his employer, the United States Department of Agriculture ("USDA"), had discriminated against him, filed claims with the Equal Employment Opportunity Commission ("EEOC") and made informal complaints. Then, when he felt that he had been the victim of further discrimination and retaliation in response to those complaints, he made additional formal and informal complaints and, ultimately, filed suit in this Court against Defendant Thomas J. Vilsack, USDA Secretary.[1] The USDA moved to dismiss or, in the alternative, for summary judgment, ECF No. 28, and on February 20, 2013, I granted summary judgment as to four of Plaintiff's five claims against it; his claim for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, survived. *See* Mem. Op. 34, ECF No. 46. Now that discovery has closed, Defendant again moves for summary judgment.

---

[1] Plaintiff initially named additional defendants but voluntarily dismissed his four claims against them. ECF No. 7.

ECF No. 76.[2]  Because Plaintiff exhausted his administrative remedies and a genuine dispute exists as to the material facts concerning Plaintiff's retaliation claim, as discussed below, I will deny Defendant's motion and schedule this case for trial.

## I. BACKGROUND[3]

Plaintiff, an African-American, worked for the USDA at the Beltsville Agricultural Research Service ("BARC") for more than a decade as a high voltage electrician and, following a six-month period of administrative leave, as a construction inspector. Compl. ¶ 9, ECF No. 1. He has an extensive history of engaging in EEOC activity and making other complaints of discrimination, beginning with EEOC complaints he filed in 2002, 2005, and 2007. *Id.* ¶¶ 22, 23, 25. Additionally, in 2008, Plaintiff and other African-American co-workers complained about racial discrimination. *Id.* ¶ 26.

On February 17, 2009, Plaintiff joined an EEOC class action, later re-categorized as "a multi-complainant racial discrimination action," against his employer, alleging racial discrimination. *Id.* ¶ 27 & n.1. On April 24, 2009 and May 13, 2009, Plaintiff filed informal and formal racial discrimination and retaliation complaints with the EEOC, in response to a "Memorandum of Caution" that Plaintiff's then-supervisor, Chizo Irechukwu, issued a month earlier "for allegedly failing to report to work while off-duty to address an alleged emergency

---

[2] The parties fully briefed this motion. ECF Nos. 76-1, 79, 80. A hearing is unnecessary. *See* Loc. R. 105.6.

[3] In reviewing the evidence related to a motion for summary judgment, the Court considers the facts in the light most favorable to the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). Here, unless otherwise stated, undisputed facts comprise the background. Where a dispute exists, I consider the facts in the light most favorable to Plaintiff. *See Ricci*, 557 U.S. at 585–86; *George & Co.*, 575 F.3d at 391–92; *Dean*, 336 F. Supp. 2d at 480. For a comprehensive recitation of the facts, please refer to my February 20, 2013 Memorandum Opinion.

power outage situation." Compl. ¶ 30.  According to Plaintiff, he was on approved leave at the time and not required to report to work.  *Id.*  In relation to that claim, Plaintiff provided a statement to the EEOC investigator on October 12, 2009, to rebut an affidavit Irechukwu submitted about the basis for issuing the Memorandum of Caution.  ECF No. 37-2; *see* Pl.'s Opp'n to Def.'s First Mot. 7, ECF No. 37.

On November 30, 2009, Plaintiff discovered a caricature of himself (the "Caricature"), which he considered "harassing, hostile, threatening, frightening, intimidating, and racially motivated," that had been posted at his workplace while he was on vacation; soon thereafter, Plaintiff reported it to "BARC Security."  *Id.* ¶¶ 36–44.  The Caricature depicted him with a "cross bow bolt" through his head; his first name was written above it.  Coates Am. Aff. 9, 11, ECF No. 37-3.  It was posted in the conference room that Irechukwu and another supervisor of his, Christian Obineme, had been using to host a seminar.  Compl. ¶¶ 36–37.  On January 15, 2010, Plaintiff "discovered . . . a freshly embedded arrow or bolt lodged in a utility pole" that he maintained (the "Arrow") and informed "USDA supervisors."  *Id.* ¶ 44.  It "shocked and terrified him" and he reported it as "continued racial harassment."  *Id.* ¶ 46.  Plaintiff deposed BARC employees, including Irechukwu, on March 11, 2010, in conjunction with his May, 2009 EEOC claim.  *Id.* ¶ 49.  On April 26, 2010, Plaintiff filed another EEOC complaint of racial discrimination and retaliation.  *Id.* ¶ 52.

Plaintiff's litany of Defendant's alleged retaliatory acts also is lengthy.  Plaintiff received written reprimands from his supervisors in October 2007 and April 2009, following his EEOC claims.  Compl. ¶¶ 25, 30.  Plaintiff also considers the November 2009 Caricature, which followed his October 2009 actions in furtherance of his then-pending EEOC claim, to be retaliatory.  *Id.* ¶¶ 37–40.  According to Plaintiff, electrician work leader Gene Howard, "part of

3

the management/supervisory team" whom he had named in an earlier EEOC claim, drew it and Irechukwu, Obineme and James Huffstickler, another supervisor of his, all "observed the Caricature posted on an easel board . . . for over a two (2) week time period" without removing it or reporting it. *Id.* ¶¶ 18, 23, 37–40. He also perceives the arrow he found in January 2010 to be retaliatory. *Id.* ¶¶ 44–46. On March 12, 2010, the day after Plaintiff deposed BARC employees with regard to his May 2009 EEOC complaint, Plaintiff's superiors issued a "Letter of Reprimand" to him "for 'conduct unbecoming a Federal employee'" and denied his request for overtime compensation. *Id.* ¶¶ 50–51; *see* Pl.'s Opp'n 15 n.3 (clarifying that both actions occurred on March 12, 2010); Coates Am. Aff. 3 (same). On May 10, 2010, less than one month after Coates filed an EEOC complaint, Irechukwu "proposed Coates for a five (5) day suspension" that ultimately was rescinded; Irechukwu claimed that Plaintiff "'fail[ed] to follow supervisory instructions.'" Compl. ¶ 53. Plaintiff took disability leave on May 11, 2010, followed by administrative leave in June 2010, and when Plaintiff returned to work on December 13, 2010, Defendant assigned Plaintiff "to serve in the position of 'Construction Inspector,' a subordinate position" that Plaintiff found "humiliating" and in which he was "denied the opportunity to earn hundreds of hours of available, valuable overtime," as well as access to a government vehicle. *Id.* ¶¶ 54–56, 67.

As noted, Plaintiff's nine-count Complaint has been reduced to one count for retaliation in violation of Title VII, and Defendant, with the benefit of facts learned during discovery, moves again for summary judgment, this time on the grounds that Plaintiff failed to exhaust administrative remedies with regard to the Caricature and Arrow incidents, and that Plaintiff failed to establish a prima facie case of retaliation based on those incidents, the March 12, 2010 letter of reprimand and denial of his request for overtime compensation, or the May 10, 2010

4

letter of proposed suspension. Def.'s Mem. 1, 11. Defendant also contends that Plaintiff "has failed to establish that Defendant's legitimate nonretaliatory reasons for these actions," as well as its reason for its December 13, 2010 reassignment of Plaintiff to serve as a Construction Inspector after he returned from leave, "are a pretext for retaliation." *Id.*

## II.  STANDARD OF REVIEW

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt"; wholly speculative assertions do not create "fair doubt." *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin, v. Baxter Healthcare Corp.*, 197 F. Supp. 2d 669, 671 (D. Md. 1999). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

## III. DISCUSSION

42 U.S.C. § 2000e-3(a) provides that it is unlawful for an employer "to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." Although "[t]he plain meaning of the statutory language provides protection of an employee's opposition activity when the employee responds to an actual unlawful employment practice," the Fourth Circuit has "[r]ead[] the language generously to give effect to its purpose" and "held that opposition activity is protected when it responds to an employment practice that the employee *reasonably believes* is unlawful." *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006) (emphasis in the original).

### A. Exhaustion of Administrative Remedies

Defendant argues that Plaintiff's retaliation claims based on the November 30, 2009 Caricature incident and the January 15, 2010 Arrow incident should be time-barred because Plaintiff did not contact an EEOC counselor until March 16, 2010, more than forty-five days after both incidents. Def.'s Mem. 10. Plaintiff concedes that he did not contact an EEOC counselor until more than forty-five days after these incidents. Pl.'s Opp'n 2. Yet, he contends that it was not necessary to make such contact because the events occurred "during the pendency of Plaintiff's formal [EEOC] complaints filed on or about May 13, 2009 . . . and February 17, 2009," and "a Title VII plaintiff may raise the retaliation claim under such circumstances for the first time in Federal court." *Id.* at 2, 22.

It is true that an employee must exhaust all administrative remedies before filing a Title VII suit. 42 U.S.C. § 2000(e)-16(c). But, when a Title VII claim of retaliation identifies an

earlier EEOC claim as the protected activity, the earlier EEOC claim suffices for purposes of exhaustion of administrative remedies. *See Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 301–04 (4th Cir. 2009) (reaffirming its previous holding in *Nealon v. Stone*, 958 F.2d 584 (4th Cir. 1992), that "'a plaintiff may raise the retaliation claim for the first time in federal court'" when "'asserting a Title VII claim of retaliation for filing a previous EEOC charge'" (quoting *Nealon*)). Neither *Landino v. Sapp*, 520 F. App'x 195 (4th Cir. 2013), nor *Smith v. Vilsack*, 832 F. Supp. 2d 573 (D. Md. 2011), on which Defendant relies (neither of which is binding precedent), holds otherwise. *See Landino*, 520 F. App'x 195 (holding that plaintiff failed to exhaust administrative remedies for retaliation claim when he failed to make timely contact with an EEOC counselor for his formal EEOC claim, which the EEOC consequently found to be time-barred; plaintiff had two properly-filed EEOC claims, but he settled and released those claims, such that they could not form the basis for a retaliation claim); *Smith*, 832 F. Supp. 2d 573 (granting summary judgment as to discrimination claim for failure to exhaust administrative remedies, but not granting summary judgment as to the retaliation claim based on same acts). Here, Plaintiff properly filed an EEOC claim of discrimination and retaliation on May 13, 2009, and he alleges that the Caricature and Arrow incidents were in retaliation for that claim and other protected activity. Therefore, Plaintiff did not need to do anything more to exhaust administrative remedies for his retaliation claim, and summary judgment on this ground would be improper. *See Jones*, 551 F.3d at 301–04.

### B. Retaliation Claim

To succeed on a Title VII retaliation claim, a plaintiff first must show that (1) he "'engaged in protected activity,'" (2) the employer "'took adverse action against [him],'" and (3) "'a causal relationship existed between the protected activity and the adverse employment

activity.'" *Westmoreland v. Prince George's Cnty, Md.*, 876 F. Supp. 2d 594, 612 (D. Md. 2012) (quoting *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004)). In the Fourth Circuit, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973), applies to Title VII claims. *See Bryan v. Prince George's Cnty.*, 484 F. App'x 775, 776 (4th Cir. 2012). Under this framework, after an employee makes out a *prima facie* case, the burden shifts to the employer, which then must "proffer evidence of a legitimate, non-discriminatory reason for the adverse employment action." *Wright v. Sw. Airlines*, 319 F. App'x 232, 233 (4th Cir. 2009). If the employer does so, the burden shifts back to the employee "to prove by a preponderance of the evidence that the proffered reasons were pretextual." *Id.* at 233.

   1. Prima Facie Case

Defendant once again challenges the second and third elements of Plaintiff's retaliation claim. *See* Def.'s Mem. 12; Mem. Op. 15. Specifically, Defendant argues that the letter of reprimand and the letter of proposed suspension were not materially adverse actions, and that Plaintiff fails to show a causal connection between his EEOC complaints and these letters, the Caricature and Arrow incidents, and the denial of overtime compensation.[4] Def.'s Mem. 13–16. As I noted in my earlier Memorandum Opinion, to establish that an employment action is adverse, "a plaintiff must show that a *reasonable employee* would have found the challenged action materially adverse," thereby "dissuad[ing] a *reasonable worker* from making [a complaint] of discrimination." Mem. Op. 15 (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (emphasis added) (internal citations omitted)). Additionally, I observed that "'retaliation may come in the form of a pattern [of] behavior, rather than a single [discrete] act,'" and therefore "'a court may consider the cumulative effect of several allegedly retaliatory

---

[4] Defendant does not contend that Plaintiff failed to establish a prima facie case of retaliation based on his reassignment in December 2010.

acts.'" *Id.* at 16 (quoting *Smith v. Vilsack*, 832 F. Supp. 2d 573, 585–86 (D. Md. 2011)). Thus, in that Memorandum Opinion, I "'consider[ed] the cumulative effect" of the "long, tumultuous work history" and "series of retaliatory acts" that Plaintiff alleges, and concluded that, although it was "clear *Plaintiff* was not dissuaded by the alleged retaliatory actions by Defendant as Plaintiff continued to make complaints for what he perceived to be acts of discrimination," nonetheless, "a reasonable jury could conclude that the formal, written reprimand, the denial of overtime, and the proposed suspension might 'dissuade[] a *reasonable worker* from making or supporting a charge of discrimination' against his employer.'" *Id.* at 15, 17 (emphasis added) (citations omitted). On that basis, I concluded that Plaintiff had established the second element of retaliation. *Id.* at 17.

The only evidence Defendant cites to support a different conclusion now is Plaintiff's deposition testimony that the letter of reprimand did not cause him to "sustain a loss in salary, pay grade or benefits" or "affect his job responsibilities and duties," Def.'s Mem. 15 (citing Coates Dep. 78:3–14, Def.'s Mem. Ex. 1, ECF No. 76-2), and the letter of proposed suspension did not cause him to "sustain a reduction in his salary, pay grade or benefits," *id.* at 16 (citing Coates Dep. 112:9–16). But, unlike for a discrimination claim under Title VII, to succeed on a retaliation claim under Title VII, a plaintiff does not need to show that the employer's "actions . . . affect[ed] the terms and conditions of employment." *See Burlington N.*, 548 U.S. at 64 (holding that the scope of the retaliation provision is broader than that of Title VII's substantive discrimination provision). Therefore, it is immaterial whether Defendant caused Plaintiff to lose pay or benefits or to change his job duties, if the threshold test for retaliation otherwise is established. *See id.*

It is true, however, as Defendant argues, that neither the letter of reprimand nor the letter of proposed suspension is an adverse employment action on its own. *See Muldrow v. Blank*, No. PWG-13-1200, 2014 WL 938475, at *10 (D. Md. Mar. 10, 2014) (noting that neither "'a formal letter of reprimand,' or 'a proposed termination'" qualifies as "an adverse employment action in a retaliation claim" (quoting *Rock v. McHugh*, 819 F. Supp. 2d 456, 470–71 (D. Md. 2011)). But, as I have stated here and in my earlier Memorandum Opinion, I am "'consider[ing] the cumulative effect of [the] several allegedly retaliatory acts'" because "'context matters' in retaliation cases."[5] *See Smith*, 832 F. Supp. 2d at 585–86 (quoting *Burlington N.*, 548 U.S. at 69); Mem. Op. 16. And, although the letters themselves cannot be adverse employment actions, the Caricature and Arrow incidents, as well as the failure to provide overtime compensation, can be, and I consider all of the actions cumulatively. *See Burlington N.*, 548 U.S. at 68–69; *Smith*, 832 F. Supp. 2d at 585–86; *Rollins v. Verizon Md., Inc.*, No. RDB-09-2379, 2010 WL 449361, at *7 (D. Md. Nov. 5, 2010) (reviewing cases from various courts and concluding that denial of overtime compensation is materially adverse action for purposes of retaliation claim). Thus, without any change in the material facts before me, I once again conclude that a reasonable jury could find that the series of employer actions that Plaintiff alleges could "dissuade[] a *reasonable*

---

[5] Defendant insists that, "[t]o the extent Plaintiff attempts to assert that the caricature and arrow incidents are part of 'a pattern and practice o[f] continuing retaliatory conduct,' the law forecloses this attempt because '[s]uch a theory only applies. . . when an employee asserts a hostile work environment claim.'" Def.'s Reply 4 n.2 (quoting Pl.'s Opp'n 23; *Smith*, 832 F. Supp. 2d at 581). The "theory" referred to in *Smith*, however, is "the 'continuing violation' theory, which 'allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination.'" *Smith*, 832 F. Supp. 2d at 581 (quoting *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007)). Plaintiff is not advocating the consideration of time-barred actions. Further, *Smith* states that "a court may consider the cumulative effect of several allegedly retaliatory acts without converting the claim into a hostile work environment claim." *Id.* at 586.

*worker* from making or supporting a charge of discrimination' against his employer." *See id.* at 68 (citation and quotation marks omitted).

With regard to the third element, causality, Defendant contends that Plaintiff fails to establish causality because there is no evidence of who drew the Caricature or shot the Arrow, or that the supervisor who issued the letter of reprimand and denied Plaintiff overtime pay was aware that Plaintiff engaged in protected activity.[6]  Def.'s Mem. 13–16.  According to Defendant, "[t]here were no eyewitnesses" to the drawing of the Caricature or the shooting of the Arrow, and nobody has "admitted to performing the actions." *Id.* at 13.  Defendant notes, accurately, that "Plaintiff testified at his deposition that he did not see the caricature being drawn, nobody told him they saw who drew the caricature, and he is not aware of anyone admitting to drawing the caricature," and he also testified that "he did not see who shot the arrow into the pole, the circumstances of how it came to be lodged there, and he is not aware of anyone admitting to shooting the arrow." *Id.* (citing Coates Dep. 72:20–74:1, 75:1–76:2).

Plaintiff counters that he "has repeatedly stated under oath that Gene Howard, Huffstickler and Obineme are responsible for the Caricature and arrow incidents." Pl.'s Opp'n 27.  Yet, Plaintiff's statement in an affidavit that he "believe[s] Gene Howard, James Huffstickler, and Christian Obineme are responsible" for the Caricature and Arrow incidents, *see* Coates Am. Aff. 9 & 12, is opinion testimony inadmissible under Fed. R. Evid. 701 and—considered in isolation—not sufficient to withstand summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  Nonetheless, Coates testified that Gene Howard, who was "[a]t sometime . . . an acting supervisor of [his]," was "the person who drew the caricature."

---

[6] Defendant does not argue that Plaintiff has not established a causal relationship between the letter of proposed suspension and the alleged adverse employment actions.  Also, Defendant no longer challenges temporal proximity, which I previously concluded existed as a basis for causality. Mem. Op. 19.

11

Coates Dep. 68:3–9. He testified that Howard was "a caricature drawer" and "[e]verybody knew" that Howard drew the Caricature, including "Donald Pumphrey [who] had worked at BARC, and he saw it and knew exactly who had drew [sic] it." *Id.* at 69:1–6. Additionally, Plaintiff stated in his Amended Affidavit that "Howard, Huffstickler and Obineme all know that [he] service[d] and [was] responsible for servicing the utility pole where the bolt was found," and that "Huffstickler admitted during deposition on April 20, 2010, that he hunted on the BARC facility with a crossbow and bolt during the hunting season in question, i.e., at the time the bolt and drawing were found." Coates Am. Aff. 10. Plaintiff also stated that "[t]he bolt was designed to torment, threaten, and frighten" him, and the Caricature was intended "to scare" him and induce him "to quit the Agency or withdraw [his] discrimination complaints." *Id.* at 10, 12.

To be sure, this circumstantial evidence is not overwhelming, especially if either incident is viewed in isolation. But I must view the facts cumulatively, in the light most favorable to Plaintiff. *See Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *Smith v. Vilsack*, 832 F. Supp. 2d 573, 585–86 (D. Md. 2011). In this light, Plaintiff named Howard, Huffstickler, and Obineme in EEOC claims; about six weeks after Plaintiff engaged in protected activity, there was a Caricature of Coates with an arrow through his head and labeled with Coates's name; the Caricature hung in a conference room where Huffstickler and Obineme lead a seminar; Howard was known to draw caricatures; and six weeks later, during a period when Huffstickler admits to hunting on the grounds with a cross bow, Coates found an Arrow lodged in a pole that he serviced. From these facts, a reasonable jury could conclude that Plaintiff's supervisors were retaliating against him for his EEOC activity. Thus, Plaintiff has established a *prima facie* case of retaliation with regard to the Caricature and the Arrow. *See Price v. Thompson*, 380 F.3d 209,

212 (4th Cir. 2004); *Westmoreland v. Prince George's Cnty, Md.*, 876 F. Supp. 2d 594, 612 (D. Md. 2012).

As for Defendant's contention that Troy Wadzink, the supervisor who issued the letter of reprimand and denied Plaintiff overtime pay, was not aware that Plaintiff engaged in protected activity, such that there cannot be a causal connection, Plaintiff counters that "this record reflects that the Letter of Reprimand," as well as the denial of overtime pay, were "issued by Wadzink at the direction of Irechukwu one (1) day after Irechukwu's deposition in Coates' EEO case." Pl.'s Opp'n 27–28, 29. The parties agree that Wadzink stated in an affidavit that Irechukwu "prepared" the letter of reprimand "for [Wadzink's] signature," and that Irechukwu stated that "Wadzink was responsible for the Letter of Reprimand." Pl.'s Opp'n 13 n.2 (citing EEOC Report of Investigation 260, 289, ECF No. 28-1); Def.'s Reply 7 n.3. According to Plaintiff, Irechukwu also directed Wadzink to deny Plaintiff's request for overtime compensation. Pl.'s Opp'n 15 (citing EEOC Report of Investigation 64, 259). As Defendant sees the origination of the letter of reprimand,

> Wadzink was new to the Agency at this time and thus was not familiar with the Employee Relations Branch ("ERB") procedures for letters of reprimand; the ERB has the Agency-wide responsibility to review and ultimately approve such letters. To assist Wadzink, Irechukwu simply referred the matter to Betty Gibson, a Human Resources Specialist in the ERB. Wadzink provided the substantive material for the letter, a draft of which Gibson appropriately prepared and sent to him for his review and signature. Exh. 1 (e-mail correspondence between Gibson and Wadzink (March 3-4, 2010)). Consistent with this process, Gibson was carbon copied on the letter, along with Irechukwu and Obineme –Plaintiff's second- and third-line supervisors, respectively. Irechukwu had no substantive role or involvement in the letter of reprimand . . . .

Def.'s Reply 7 n.3. But, in the e-mails to which Defendant refers, Gibson simply states that she sent to Wadzink "the Letter of Reprimand for Alvin Coates" which "ha[d] been reviewed and

13

approved by ERB." *Id.* Ex. 1, ECF No. 80-1.  Thus, it clearly is disputed whether Irechukwu or Wadzink initiated the letter of reprimand.  Moreover, as I previously concluded,

> there are ample facts to support a finding that Plaintiff's supervisors were aware of his complaints.  Following Plaintiff's report of the Caricature, Employee Relations commenced an investigation in which it interviewed relevant personnel, including those allegedly responsible for the underlying actions in this claim.  Additionally, Irechukwu certainly possessed knowledge of Plaintiff's protected activity, as she was the deponent in the March 11, 2010 deposition.

Mem. Op. 19.  Therefore, it is for the jury to resolve these disputes of material fact.  In sum, a reasonable jury could find that Plaintiff met the burden of establishing a *prima facie* case of retaliation based on all of the alleged adverse actions.  *See Price*, 380 F.3d at 212; *Westmoreland*, 876 F. Supp. 2d at 612.

### 2.  *Legitimate Non-Discriminatory Reason and Pretext*

The burden shifts to Defendant to show that the actions at issue occurred for legitimate nonretaliatory reasons and, if Defendant meets its burden, back to Plaintiff to show that those reasons were pretext.  *Wright v. Sw. Airlines*, 319 F. App'x 232, 233 (4th Cir. 2009).  As I noted in my February 20, 2013 Memorandum Opinion, Defendant established legitimate nonretaliatory reasons for the letter of reprimand, the denial of overtime compensation, and the proposed suspension.  Mem. Op. 20–21. Further, Defendant has provided a legitimate nondiscriminatory reason for Plaintiff's reassignment:  Defendant was accommodating Plaintiff's requests "that he 'not work alone' and be allowed to 'work with another qualified individual,'" and "Construction Inspector was 'the best position' it found that would accommodate Plaintiff's request and also fit 'his skills and abilities,'" given that the employer "did not have another qualified high-voltage electrician with whom Plaintiff could work."   Def.'s Mem. 25 (quoting Ltr. from Thomas C.

14

Goldman, M.D. to Richard C. Baker, Esq. 1 (Dec. 9, 2010), ECF No. 31, and Ltr. from Lisa A. Baldus to Baker (Dec. 13, 2010), ECF No. 28-10; citing Coates Tr. 136:6–11).

Yet, Defendant does not "articulat[e] legitimate nonretaliatory reasons for the[] [Caricature and Arrow] incidents." *See* Def.'s Mem. 17 n.5; Def.'s Reply 11 n.4. Additionally, I previously concluded that, with regard to the letter of reprimand, the denial of overtime compensation, and the proposed suspension, "Plaintiff's evidence gives rise to questions of credibility as to Defendant's purported 'legitimate nonretaliatory reasons.'" Mem. Op. 23 (quoting *Dugan v. Albemarle Cnty. Sch. Bd.*, 293 F.3d 716, 722 (4th Cir. 2002)).

Moreover, Defendant has not identified any new evidence to negate Plaintiff's demonstration of pretext. As for the letter of reprimand and the denial of overtime, Defendant argued in its first motion for summary judgment that both of these actions were legitimate because Plaintiff had violated a standard operating procedure ("SOP") when he failed to return the call to the operator that had summoned him in for emergency work, even though Plaintiff indeed reported to work. Now, Defendant makes much of the fact that Plaintiff testified that he did not return the call to the operator, such that it is undisputed fact. Def.'s Mem. 17–19; Def.'s Reply 11–12. But, that was not the genuine dispute that precluded summary judgment in Defendant's favor: The dispute was whether the SOP applied to Plaintiff. *See* Mem. Op. 22. That dispute still exists, based on evidence the parties submitted to support their briefing of the earlier motion, unaffected by the new evidence Defendant cites.[7]  *See* Def.'s Mem. 18–19 & n.6;

---

[7] Thus, although Defendant argues that Plaintiff's latest Declaration should be disregarded under the sham affidavit rule, *see* Def.'s Reply 13 (citing *Hernandez v. Trawler Miss Vertie Mae Inc.*, 187 F.3d 432, 438 (4th Cir. 1999), the genuine dispute is based on evidence that preceded that later Declaration.

Pl.'s Opp'n 16. Therefore, summary judgment is not appropriate on Plaintiff's remaining claim for retaliation. *See Wright*, 319 F. App'x at 233.

## **ORDER**

Accordingly, it is, this 6th day of March, 2015, hereby ORDERED that Defendant's Motion for Summary Judgment, ECF No. 76, IS DENIED. A conference call will be held to discuss further scheduling in this case.

/S/
Paul W. Grimm
United States District Judge

lyb